UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**NELSON FERNANDEZ**,

Plaintiff,

vs.

**COUNTRY VISIONS, INC., d/b/a APRICOT LANE BOUTIQUE, a foreign for-profit corporation, and WEIMAN, INC., d/b/a APRICOT LANE, a Florida for-profit corporation,**

Defendants.
_________________________________/

**COMPLAINT**

Plaintiff NELSON FERNANDEZ, through undersigned counsel, sues Defendants COUNTRY VISIONS, INC., d/b/a APRICOT LANE BOUTIQUE, a foreign for-profit corporation, and WEIMAN, INC., d/b/a APRICOT LANE, a Florida for-profit corporation, and alleges as follows:

1. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36. This further is an action for declaratory and injunctive relief, attorney's fees, costs, and expenses for lawful discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq*. ("Rehab Act").

2. This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA and the Rehab Act. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and 2202.

3. Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4. Plaintiff NELSON FERNANDEZ is a resident of Palm Beach County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA"). and is a qualified individual with a disability as defined by the Rehab Act. Plaintiff is also expressly authorized to bring this case as an otherwise qualified person with a disability under the Rehab Act, 29 U.S.C. §§794(a)(2) and 794(b)(3)(A), and under Section 505-f of the Rehab Act which enforces Section 504 of the Rehab Act, 29 U.S.C. §§794 and 794a, incorporating the rights and remedies set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, *et seq*.

5. Plaintiff is and at all relevant times has been visually impaired and physically disabled who has been diagnosed with Relapsing-Remitting Multiple Sclerosis ("RRMS"). As a result of his disease, Plaintiff is currently paralyzed in approximately 80% to 90% of his body as a whole and only has limited use of his left hand. Further, because of his disease, Plaintiff has developed optic neuritis and is visually disabled, with complete blindness in one eye and limited vision in the other eye. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, sight, accurately visualizing his world, and adequately traversing obstacles. As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and in 42 U.S.C. §3602(h). Plaintiff is also an otherwise qualified individual with a disability who has been denied the benefits of a program or activity receiving federal financial assistance and is thus covered by the Rehab Act, 29 U.S.C. §794(a).

6. Because he is visually disabled, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software and other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *6-7 (E.D.N.Y. Dec. 21, 2017).

7. Defendant Country Visions, Inc, is a foreign for-profit corporation authorized to do business and doing business in the State of Florida through franchise operations. Defendant Country Visions, Inc. owns, operates, franchises, and/or controls a chain of retail clothing stores nationwide, including the store located in Delray Beach, Florida that Plaintiff had patronized and intended to patronize in the near future. Defendant Weiman, Inc. is a Florida for-profit corporation authorized to do business in the State of Florida that owns, operates, and controls the physical store located in Delray Beach, Florida that Plaintiff had patronized and intended to patronize in the near future. Defendants also owns, leases, leases to, or operates a business that are the recipients of federal financial assistance. See Exhibit "A" attached hereto for proof of federal financial funding

for Defendant Country Visions, Inc. and Exhibit "B" attached hereto for proof of federal financial funding for Defendant Weiman, Inc.

8. Plaintiff's visual disability limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

9. Plaintiff frequently accesses the internet. Because he is significantly and permanently blind and visually disabled, to effectively communicate and comprehend information available on the internet and hereby access/comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10. At all times material hereto, Defendants were and still are organizations that own, operate, and control retail clothing stores under the name "Apricot Lane," including the retail store located in Delray Beach, Florida. The Apricot Lane store in Delray Beach is open to the public. As the owners, operators, and/or controllers of this retail store, Defendants are defined as places of "public accommodation" within meaning of Title III because Defendants are private entitities which own, operate, and/or cotnrol "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

11. Because Defendants' Delray Beach store is a store open to the public, it is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E), and 28 C.F.R. Part 36.

12. Defendants also control, maintain, and/or operate an adjunct website, https://apricotlaneboutique.com/store/delraybeach (hereinafter the "Website"). One of the functions of the Website is to provide the public information on Defendant's Delray Beach store

that sells its merchandise within the State of Florida. Defendants also sell to the public their merchandise through the Website, which acts as a point of sale for Defendants' physical store.

13. The Website also services Defendants' physical store by providing information on its available merchandise, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers.

14. Because the Website allows the public the ability to locate Defendants' physical store, purchase merchandise that is also available for purchase from and in the physical store, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical store, the Website is a necessary extension of, and gateway to the goods, services, privileges, and advantages available in and form Defendants' physical store. As a necessary service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is a necessary extension of the goods, services, privileges, and advantages made available to the general public by Defendants at and through their brick-and-mortar location and business. Furthermore, the Website is a necessary service, privilege, and advantage of Defendant's physical store in that, as a point of sale for Defendant's store, it enables users of the Website to make online purchases of merchandise from Defendant that are available in the physical store.

15. Because the public can view and purchase Defendants' merchandise through the Website that is also offered for sale in Defendants' physical store, thus having the Website act as a point of sale for Defendants' products sold in and through the physical store, and sign up for an electronic emailer to receive online offers, benefits, exclusive invitations, and discounts for use online and in the physical store, the Website is a necessary extension of, gateway to, and service, privilege, and advantage of the physical store, which is a place of public accommodation under

the ADA, 42 U.S.C. §12181(7)(E). As such, the Website is a necessary service, privilege, and advantage of Defendants' Delray Beach brick-and-mortar store that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal enjoyment of the goods, services, privileges, and advantages afforded to the non-visually disabled general public both online and in the physical store.

16. At all times material hereto, Defendants were and still are organizations owning, operating, controlling, and linking to the Website. Since the Website is open to the public through the internet and is connected to Defendants' physical store as a point of sale of merchandise from Defendant's physical store, the Website is a necessary service, privilege, and advantage of Defendants' brick-and-mortar Delray Beach store that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the full and equal enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical store. As such, Defendants have subjected themselves and the Website to the requirements of the ADA. In addition, as recipients of federal financial assistance, Defendants have subjected themselves and all of their operations, programs,1 and activities, including the Website, to the requirements, prohibitions, and anti-discrimination provisions of the Rehab Act.

17. Plaintiff is and has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers described herein are removed or remedied, Defendants' physical store in Delray Beach, and to purchase merchandise, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use on the Website or in the physical store.

18. The opportunity to shop and pre-shop Defendants' merchandise, available for delivery from the physical store, and to sign up for an electronic emailer to receive online offers, benefits, exclusive invitations, and discounts for use in the physical store from his home are important accommodations for Plaintiff because traveling outside of his home as a physically and visually disabled individual is often difficult, hazardous, frightening, frustrating, and confusing experience. Defendants have not provided their business information in any other digital format that is accessible for use by blind and visually impaired individuals using the screen reader software.

19. Like many consumers, Plaintiff accesses a number of websites at a time to help plan his visits and compare merchandise, prices, sales, discounts, and promotions. Plaintiff may look at several dozens of sites to compare features, discounts, promotions, and prices.

20. During the month of March 2021, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, sales, discounts, and promotions being offered, to learn about the brick-and-mortar store, check store hours, and check merchandise pricing with the intent to making a purchase through the Website or from Defendant's store.

21. Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendants' Website contains access barriers that prevent its free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

a. The return to home page link is mislabeled;

b. The "Sort" filter is inaccessible when navigating with a keyboard;

c. Product prices are inaccessible when navigating with a keyboard; and

d. Interference is relayed throughout the website as "item added to cart," when no such action has been taken.

22. The Website also lacks prompting information and accommodations necessary to allow blind and visually disabled individuals who use screen reader software to locate and accurately fill out online forms to purchase Defendants' merchandise from the Website.

23. Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties communicating with, the Website. Although, the Website appeared to have an "accessibility" statement displayed, that "accessibility" statement was tested and did not provide a viable alternative means for blind and visually disabled persons such as Plaintiff to quickly and effectively access and navigate the Website to make purchases of Defendants' products. Thus despite posting on the Website that the Website "has been built to be fully ADA compliant", Defendants' Website still does not provide any viable alternative means of communication with Defendants' physical store for the blind and visually impaired, and still is not ADA compliant.

24. The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, as he is unable to participate in the same shopping experience, with the same access to the merchandise, goods, sales, discounts, and promotions, as provided in the Website and at the physical stores to the non-visually disabled public while using the internet.

25. Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendants' Delray Beach store and to use the Website as a necessary extension, services, privilege, and advantage of the physical store, but he is presently unable to fully do so, as he is unable to effectively communicate with Defendants' physical store

due to his severe visual disability and the Website's access barriers. Thus, Plaintiff, as well as others who are blind or with visual disabilities, will suffer continuous and ongoing harm from Defendants' intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

26. Because the Website clearly provides support and is connected to Defendants' Delray Beach store for its goods, services, operation, and use, and thus is a necessary service, privilege, advantage, accommodation, program, and activity of Defendants' brick-and-mortar store for the purchase of Defendants' merchandise, the Website must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal enjoyment of the services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical store, which is a place of public accommodation subject to the requirements of the ADA.

27. On information and belief, Defendants have not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

28. On information and belief, Defendants have not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

29. On information and belief, Defendants have not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

30. On information and belief, Defendants have not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

31. On information and belief, Defendants have not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

32. On information and belief, Defendants have not instituted a Bug Fix Priority Policy.

33. On information and belief, Defendants have not instituted an Automated Web Accessibility Testing program.

34. Defendants have not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the blind and visually disabled.

35. Defendants have not created and instituted on the Website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

36. The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

37. Defendants have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to blind and visually disabled individuals who want the safety and privacy of purchasing Defendants' merchandise offered on the Website online from their homes.

38. Thus, Defendants have not provided full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations, programs, and activities provided by and through the Website in contravention of the ADA and the Rehab Act.

39. Further, public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff. Likewise, under the Rehab Act,

public accommodations and companies that receive federal financial assistance must not discriminate against disabled persons and are required to make the facilities, programs, or activities they operate fully and readily accessible to persons with disabilities.

40. The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping Websites, such as the Website at issue in the instant action. In addition, Congress enacted the Rehab Act to enforce the policy of the United States that all programs, projects and activities receiving federal assistance " ... be carried out in a manner consistent with the principles of ... inclusion, integration and full participation of the individuals [with disabilities]." 29 U.S.C. §701(c)(3).

41. Defendants are, and at all relevant times have been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

42. Defendants are, and at all relevant times have been, aware of the need to provide full access to all visitors to the Website.

43. The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities such as Plaintiff.

44. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendants' unlawful and discriminatory practices in connection with the Website access and its operation.

45. Notice to Defendants is not required because of Defendants' failure to cure the violations.

46. Enforcement of Plaintiff's rights under the ADA and the Rehab Act is right and just pursuant to 28 U.S.C. §§2201 and 2202.

47. Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

**COUNT I – VIOLATION OF THE ADA**

48. Plaintiff re-alleges paragraphs 1 through 47 as if set forth fully herein.

49. Pursuant to 42 U.S.C. §12181(7)(E), Defendants are a public accommodation under the ADA because they own, operate, and/or control a physical store as defined within §12181(7)(E), and are subject to the ADA.

50. Pursuant to 42 U.S.C. §12181(7)(E), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendants' store, acts as a point of sale for Defendants' physical store by allowing users to purchase merchandise that is also available for delivery and purchase from the physical store, and allows users to sign up for an electronic emailer to receive online offers, benefits, exclusive invitations, and discounts for use both online and in the physical store. The Website thus is an extension of, gateway to, and necessary service, privilege, and advantage of Defendants' physical store. Further, the Website also serves to augment Defendants' physical store by providing the public information on the location of the store and by educating the public as to Defendants' available products sold through the Website and in the physical store. The Website thus is necessary for Plaintiff to fully enjoy and have access to all of the goods, services, privileges, and advantages being offered by Defendants both online and in the physical store.

51. Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

52. Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

53. In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

54. Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

55. Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal enjoyment of the goods, information and services that Defendants have made available to the public on the Website and in the physical store in violation of 42 U.S.C. §12101, *et seq.*, and as prohibited by 42 U.S.C. §12182, *et seq*.

56. The Website was subsequently visited by Plaintiff's expert in March 2021, and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendants thus have made insufficient material changes or improvements to the Website to enable its full use, enjoyment, and accessibility for visually disabled persons such as Plaintiff. When the Website was visited by the expert, it was also revealed that, although the Website appeared to have an "accessibility" statement on its home page, that "accessibility" statement still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons such as Plaintiff. Defendants also have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to blind and visually disabled individuals Defendants thus have failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302. The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Robert D. Moody, attached hereto as Composite Exhibit "B" and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

57. More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

58. Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

59. There are readily available, well established guidelines on the internet for making Websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendants' business nor would it result in an undue burden to Defendants.

60. Defendants have violated the ADA – and continue to violate the ADA – by denying access to the Website by individuals, such as Plaintiff, with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

61. The ADA and ADAAA require that public accommodations and places of public accommodation ensure that communication is effective.

62. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems." Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

63. According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

64. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

65. As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

66. As a direct and proximate result of Defendants' failure to provide an ADA compliant Website that is an extension, service, privilege, and advantage of, and critical and necessary point of sale for, Defendants' brick-and-mortar Delray Beach store, Plaintiff has suffered an injury in fact by being denied full access to and enjoyment of the goods, services, privileges, and advantages of Defendants' physical store.

67. Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

68. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a) Require Defendants to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendants' policy to ensure persons with visual disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through the Website.

b) Require Defendants to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the

Website's being readily accessible, to provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendants to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendants' physical store and becoming informed of and purchasing Defendants' merchandise online, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website.

69. Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants for the following relief:

A. A declaration that the Website is in violation of the ADA;

B. An Order requiring Defendants, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C. An Order requiring Defendants, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendants' accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D. An Order requiring Defendants, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

E. An Order directing Defendants, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendants to undertake and complete corrective procedures to its Website;

F. An Order directing Defendants, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G. An Order requiring, by a date certain, that any third-party vendors who participate on Defendants' Website to be fully accessible to the visually disabled;

H. An Order directing Defendants, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform

---

[1]  or similar.

all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I. An Order directing Defendants, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendants to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J. An Order directing Defendants, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendants' Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K. An award to Plaintiff of his reasonable attorney's fees, costs, and expenses; and

L. Such other and further relief as the Court deems just and equitable.

**COUNT II – VIOLATION OF THE REHABILITATION ACT**

70. Plaintiff re-alleges paragraphs 1 through 47 and 56 through 59 as if set forth fully herein.

71. As more specifically set forth above, Defendants have violated the Rehab Act by failing to interface the Website with screen reader software utilized by visually disabled individuals. Thus, Defendants have violated the Rehab Act, either directly or through contractual,

licensing, or other arrangements, with respect to Plaintiff and other similarly situated blind and visually disabled individuals solely by reason of their disability:

a) By excluding Plaintiff from participation in, denying him the benefits of, and subjecting him to, discrimination under any program or activity receiving federal financial assistance, Defendants have violated the Rehab Act;

b) Congress enacted the Rehab Act to enforce the policy of the United States that all programs, projects, and activities receiving federal assistance "be carried out in a manner consistent with the principles of ... inclusion, integration and full participation of the individuals [with disabilities]." 29 U.S.C. §701(c)(3);

c) Defendants are recipients of federal financial assistance bringing them under the Rehab Act, which prohibits discrimination against qualified or otherwise qualified individuals in all of the recipient's "programs or activities";

d) Section 504 of the Rehab Act prohibits recipients of federal funding from discriminating against disabled persons and requires that all facilities, programs, or activities operated by the federally funded entity be readily accessible to persons with disabilities;

e) The Rehab Act defines "program or activity" as all of the operations of the entire corporation, partnership, or other private organization, or sole proprietorship as a whole that receive and distributes federal financial assistance. Defendants' Website with its content is a "program or activity" within the meaning of the Rehab Act, 29 U.S.C. §794(b)(3)(A);

f) Plaintiff was denied access to the Website solely by reason of his disability. This denial of access to Defendants' "program or activity" subjected Plaintiff to discrimination, excluded Plaintiff from participation in the programs or activity, and denied Plaintiff the benefits of the Website, a service available to those persons who are not blind and visually disabled. As of

this filing, the Website remains inaccessible to qualified or otherwise qualified persons with visual disabilities such as Plaintiff;

g) The international website standards organization, WC3, has published widely accepted guidelines (WCAG 2.0 AA and WCAG 2.1) for making digital content accessible to individuals with disabilities. These guidelines have been endorsed by the United States Department of Justice and by the Federal courts and the United States Access Board as being applicable to websites; and,

h) Defendants have engaged in unlawful practices in violation of Section 504 of the Rehab Act, 29 U.S.C. §794, in the maintenance of the Website. These practices include, but are not limited to, denying Plaintiff, an individual with a visual disability who, with or without reasonable modifications to the rules, policies, or practices, the removal of communication barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services to participate in programs or activities provided by Defendants.

72. Defendants have acted with deliberate indifference to the applicable provisions of the Rehab Act as to the unlawful practices described herein because Defendants are, and have been, fully aware of the inaccessible features of the Website and have failed to remediate the Website to make it equally accessible to persons with visual disabilities, including Plaintiff. Defendants knew that harm to a federally protected right was substantially likely to occur, yet they failed to act on that likelihood when they failed to remediate the Website. Defendants knew this and, on information and belief, persons with authority with Defendants to order the remediation of the Website made the deliberate choice not to remediate the Website and to continue to offer the inaccessible Website to Defendants' customers and potential customers knowing that the Website was, and continues to be, inaccessible to the blind and visually disabled.

73. Plaintiff would like to be a customer at Defendants' brick-and-mortar store but before he goes to the store, he would like to determine what is available for his purchasing, what promotions are being offered, and what new items are currently available in the store. In that regard, Plaintiff continues to attempt to utilize the Website and plans to continue to utilize the Website on a regular basis to make selections for purchasing Defendants' merchandise online or in the physical store.

74. Plaintiff is continuously aware of the violations at Defendant's Website and is aware that it would be a futile gesture to attempt to utilize the Website if those violations and access barriers alleged herein continue to exist unless he is willing to suffer additional discrimination.

75. Plaintiff has suffered, and continues to suffer, frustration and humiliation as a direct result of the discriminatory conditions present at the Website. By continuing to operate the Website with discriminatory conditions, Defendants contribute to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the benefits of the programs and activities available to the general public. By encountering the discriminatory conditions at the Website and knowing that it would be a futile gesture to attempt to utilize the Website unless he is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same store or the Website readily available to the general public and is deterred and discouraged from doing so. By maintaining the Website with access barriers and Rehab Act violations, Defendants deprive Plaintiff the same equal access and participation in and benefits of its programs and activities as the non-visually disabled public.

76. Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of Defendants' present and ongoing discrimination until the Defendants are compelled to comply with the requirements of the Rehab Act.

77. Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from Defendants' noncompliance with the Rehab Act as to the Website as described hereinabove. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the Rehab Act by the Defendant. Plaintiff desires to access the Website to avail himself of the benefits thereon and/or to assure himself that the Website is in compliance with the Rehab Act so he and other similarly situated visually disabled persons will have full and equal enjoyment of the Website without fear of discrimination.

78. Plaintiff, as well as others who are blind and visually disabled seeking to access the Website, will continue to suffer such discrimination, injury, and damage without the immediate relief provided by the Rehab Act as requested herein.

79. Plaintiff is without adequate remedy at law and is suffering irreparable harm based on the facts alleged hereinabove.

80. Plaintiff has retained the undersigned counsel to represent him and is entitled to recover his attorney's fees, costs, and litigation expenses from Defendant pursuant to the Rehab Act.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants for the following relief:

A. A declaration that determines that Defendants' Website at the commencement of the subject lawsuit was in violation of the Rehabilitation Act;

B. A declaration that Defendants' Website continues to be in violation of the Rehabilitation Act;

C. A declaration that Defendants have violated the Rehabilitation Act by failing to monitor and maintain the Website to ensure that it is readily accessible to and usable by persons with visual disabilities;

D. Issuance of an Order directing Defendants, by a date certain, to alter the Website to make it accessible to, and useable by, individuals with visual disabilities to the full extent required by the Rehabilitation Act;

E. Issuance of an Order directing Defendants to evaluate and neutralize their policies and procedures towards persons with disabilities for such reasonable time so as to allow Defendants to undertake and complete corrective and remedial procedures;

F. Issuance of an Order directing Defendants to continually update and maintain its Website to ensure that it remains fully accessible to and usable by visually disabled individuals;

G. Award Plaintiff any and all compensatory damages for Defendants' deliberate indifference to his rights under the Rehabilitation Act;

H. Award Plaintiff his attorney's fees, costs, and litigation expenses pursuant to the Rehabilitation Act; and

I. Award such other relief as the Court deems just and proper and is allowable under the Rehabilitation Act.

DATED: June 7, 2021

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
4800 North Hiatus Rd
Sunrise, Fl 33351
T. 954/362-3800
954/362-3779 (Facsimile)
Email: rhannah@rhannahlaw.com

By____*s/ Roderick V. Hannah*______
RODERICK V. HANNAH
Fla. Bar No. 435384

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: duranandassociates@gmail.com

By ___*s/ Pelayo M. Duran*_________
PELAYO M. DURAN
Fla. Bar No. 0146595